May it please the court, Brian Dunn on behalf of all plaintiffs and all appellants. The issue presented here is quite simple. Would success in the plaintiff's 1983 action necessarily imply the invalidity of their criminal conviction? What we have here is a very common factual scenario. This was an event that took place over several minutes. Over the course of the convoluted encounter between the defendants and then the plaintiffs and the Long Beach Police Department officers, there were several encounters that could have given rise to a conviction under PC-69. Specifically, in terms of the location, the initial encounters occurred in front of the apartment building. They moved into the street. They moved back into the alleyway after that. And then they moved into the carport area. Can you help me understand the criminal trial? Were you counsel? I was. That's what I thought. Okay. So I don't have a good grasp of the significance at the end of the case, I guess, where the prosecutor says, you know, I've changed my mind and I'm going to not present this as a series of, just help me, walk me through what happened with that and why that was of significance here. Well, in terms of the criminal trial, we knew that one of the central issues in the criminal trial was going to be the extent to which force may have resulted in a guilty verdict or not guilty verdict. We knew that, everyone knew, going into it, that this was an issue  involving moments in time, moments in time, moments in time. She later changed her position somewhat to say that this was more of a situation in which the elements of the crime, which are specifically quite simple, A, did the defendants   resist the officers at any point in time or, two, did they intend to do that knowing that the officers were performing their lawful duties. I believe that as a strategy, what the prosecution did was realize that towards the middle of the criminal trial that she had enough evidence to convict my clients of those two elements of the crime, so that the issue of parsing the case out into continuous events wasn't necessary. But I think that that is a — did I answer the Court's question? Well, but I thought the prosecutor switched to saying, I want to just treat it as one continuous event. Well, I think that there may be some confusion as to one continuous event versus separate events. I believe that in this case, the jury instruction helped the prosecution so much that the distinction didn't have to be made as to whether this was something that is going to be looked at as a whole thing or whether it's going to be looked at as separate things, because my clients had been, under the instruction that you had, they had committed that crime. The instruction that I was hoping for, the instruction that I argued for and the instruction that I wanted would have said that if excessive force was used at any time during the entire course of the event, if at any time the And that instruction was not given. It was not given. Right. Okay. And I wanted it and I didn't get it. Right. Instead, the Court is well aware of the instruction that was given. And the highlights of it, you know, did the defendant use force to prevent or deter an officer? And when the defendant acted — Well, yeah. No, I mean, we got the instructions right here. Got it. But your position, I take it, is that the only way Heck could bar the suit from going forward is if your instruction had been given and the jury would have convicted  Because then the argument that my esteemed adversary is going to bring up, which is that this is a jury trial, and what he's going to say, and what he said at the trial court level, is that since the jury made this determination, it's over with, because the jury necessarily concluded that everything that the officers did was lawful. Well, just tell me what the facts, then. As I under — let's put aside your client's version of what happened. Fair enough. Because I actually don't think that helps you on the jury's case. I would not disagree, Your Honor. Okay. So, but the officer's version is, let's take — is it Mrs. Wilson first? Yes. She comes up and just unprovoked shoves the officer two hands in the chest before basically anything happens. Under the instructions that were given at the criminal trial, I take it the jury could have just focused on that event and said, hey, damn, boy, that's guilty. The officer wasn't using excessive force there. And not only that, but the jury would have been right, because just that push alone satisfies both elements of the crime. They intentionally used — she intentionally used force to prevent an officer from conducting his duty, and she had — she knew he was a police officer because he was in uniform. So that was exactly my point, is because who's to say that the jury didn't just stop there and say they have proven beyond a reasonable doubt both elements of this crime? And that is — the severe beating that ultimately landed them in the hospital did not occur until, undisputedly, several minutes after that push. So the question then becomes, what did the jury actually convict them of? And there's nothing in the record to show what they convicted them of, because it very well could have been that. But as the — Is there any kind of a special verdict form that was used at the criminal trial? No. And the criminal trial is just, are they guilty? Yes, Your Honor. You say — the clerk says, guilty or not guilty? Yeah. It's not like — I wish it were a civil trial where I could have had a finding of excessive force, but we didn't have that in this case. I will defer my time if — unless anyone has any more questions. I do. I'd like to refer you to our case cited in — our court's case cited in your reply, and it seems to me footnote 5 kind of answers this case, because it distinguishes between guilty pleas or no low pleas and jury verdicts. And it seems to me to say a jury verdict — this is a quote. Thus, a jury's verdict necessarily determines the lawfulness of the officer's actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would necessarily imply the invalidity of his conviction. Why doesn't an application of that precedent to this case mean because your client suffered from a jury verdict in the criminal case, that ends the civil case, at least up to that point in time? Because you have to look at the context under which that instruction is given. What instruction? I'm pointing to the footnote in Smith which explicitly distinguishes between guilty and no low pleas and jury verdicts, and what you have is a jury verdict. Why doesn't Smith tell us that means the lawfulness of the officer's conduct throughout the whole episode has been determined by the conviction to end lawful? Because that footnote, which is essentially dictated in Smith, cannot be applied to the facts of a case in which numerous acts could have given rise to a criminal conviction. And in Smith, it involved a plea. Well, stop. Because that section starts when a defendant is charged with a single-act offense but there are multiple acts involved, each of which could serve as the basis for a conviction. A jury does not determine which specific act or acts form the basis for the conviction. And then it bleeds into what I just read you. Right. And again, logically speaking, Your Honor, if a jury does not determine which specific acts form the basis of a conviction, if they don't determine that based on the plain reading of that clause, then how can we conclude that the jury necessarily came to the conclusion that all of the acts are taken together? It is a logical disconnect, and we have spent many times looking at this. Well, I understand the logic. I'm trying to figure out how we get around Smith. Because Smith dealt with the guilty or no low plea and is saying, well, that's different. We can distinguish that and permit the 1983 action to go forward. But it recognized in the jury verdict context, and it cites from several California cases as to the import of a jury verdict, if there is a jury verdict, then the criminal conviction precludes the 1983 action. But what that would assume is that the jury verdict was not involving an incident in which we have a situation like we have here. Specifically, what they talked about is People v. McIntyre in the Smith case involving the quote that the Court just read. And it says it is only incumbent that the jury agree that a culpable act occurred on that date, the exact time or sequence in relation to the offense is not material. If you have a situation such as the one that we have here, there are so many different things that have occurred at different times that you simply can't determine, based on the mere fact of a jury verdict, that they concluded that any particular act gave rise to the verdict. Let me give you one more example, Your Honor. I've represented a lot of people in a lot of criminal cases and a lot of civil cases. Essentially, when you take a plea to a criminal case, when you plead, your client is convicted of the crime and your client is also convicted of all of the elements of that crime. Logically speaking, there is no difference between a plea and a jury verdict because they both legally have the same effect. Now, I represent a lot of people who get shot and who get beaten up and who later get charged with 148 or 69. In fact, if they survive, they're almost always charged with 148 or 69 because the government knows if there's a conviction there, then they can gut the civil case. Is the progeny of Smith, is the result of Smith such that as a criminal defendant attorney, I should always take a plea so that I can later come back and say that I only pledged a part of what I just pledged to or that I'm going to parse out the plea that I just took? Because there's this footnote in this case that says that the plea does not have the same effect as the jury trial. They do have the same effect. And the jury is going to make the same determination. It's the end result. The person is convicted, they're convicted, whether it be a jury trial or a criminal plea. Of particular significance, and I want to conclude quickly because I wanted to save some time, is the application of that footnote in the Beetz case, which formulates the basis of the opposition. And in the Beetz case, what you have to understand, what I would like to... Well, Beetz reads Smith as saying, well, jury verdicts are this way and guilty pleas are this way. And Beetz involved a very distinct, discreet act. The car was backing up and the police officer shot into the car that was backing up. There is no room for ambiguity in the interpretation of that fact pattern. In fact, it wasn't even a 69 or a 148. It was assault with a deadly weapon. So there's absolutely no temporal disconnect. There's no spatial disconnect between the car backing up and the shooting. So when the jury determined that the lady was guilty for what her boyfriend did in driving a car, there's absolutely no way around that. This is not a situation where you have such a cause of action or a guilty plea that can be interpreted so many different ways. Beetz was an assault with a deadly weapon case. That fixes the officer's conduct and the use of force at one single point in time. There's no way around it. It's not a situation that had several minutes. Assault with a deadly weapon happens or it doesn't happen. If the jury determined that it was a clean shooting, if the jury determined that the person wasn't guilty, they would have had to have determined that it was a clean shooting. And that is the only case, Your Honors, that interprets that footnote in Smith such as to bar a cause of action for 1983. And having stated that, if there are no further questions, I'd like to reserve the remainder of my time. Thank you. Good morning, Your Honors. May it please the Court. I'm Howard Russell, Deputy City Attorney for Appellees. I think what's very important to recognize in this case is that two juries heard from the Wilsons and the officers, and both juries unanimously found against the Wilsons. This is not a civil case that comes to you when the summary judgment disposed of the entire case and denied the Wilsons any opportunity to have their day in civil court. Well, I don't agree with that at all. Put aside the civil trial. I just don't think you'd get any mileage out of that. Let's go back to the criminal trial. So the jury instruction that counsel just referenced, which would have required the jury to determine that throughout the entire sequence of events, no excessive force was used in order to convict. You concede that that instruction was not given in this case, right? I concede that the instruction did not read exactly that way. But the jury was told that if the officers are using excessive force, then there must be an acquittal. And the jury verdict, particularly as it relates to Mrs. Wilson, was guilty against Officer Hampton. I'm looking at the instructions. So pull them out and show me where you think the jury was told that it had to find that there was no excessive force throughout the entire incident in order to convict. Your Honor, I'm not saying that. Well, just point me to, well, if you don't have that, I think you lose. You're not going to get a heck bar. So point me to what you've got that's closest to that in these jury instructions. In the criminal jury instruction, and this is in the supplemental excerpt of record pages 1853 lines 18 through 24 and 1856 lines 12 through 17, the jury instructions state that a police officer who uses excessive force is not lawfully performing his duties. And the Wilsons were convicted of obstructing. Okay. So let's just take the scenario that one of the officers offered at trial, at the criminal trial. I show up. I say, hey, you've got this loud noise issue. Keep it down. There's some, you know, not polite response. And then Mrs. Wilson just walks up unprovoked and shoves the officer two hands in the chest. Why couldn't the jury in the criminal trial have just stopped right there and said, geez, yeah, there was no excessive force. The officer wasn't using any force. In fact, he was as polite as could be and just told her to keep the noise down. And what did she do? She hauled off and used force to try to resist his efforts to, you know, to abate the noise. Why couldn't the jury have just convicted on that and said, you know, we know you have to worry about what happened after that because she's clearly guilty under the instructions that we've been given. As it relates to Officer Hampton, they could have done that. Okay. But they also convicted her of PC-69 against Officer Nystedt and Officer Kruger. Officer Kruger didn't even show up until the incident had moved into the carport area and the officers were attempting to take Mr. Wilson into custody. So the only force that Officer Kruger would have used, at least before the handcuffing since there was a post-handcuffing allegation of lifting her up by the arms, would have occurred in the carport. Officer Nystedt didn't use any force against Mrs. Wilson until they got to the carport either. In fact, the only physical touching between Officer Nystedt and Mrs. Wilson took place in the carport when Mrs. Wilson jumped on Officer Nystedt's back. So while I agree with you, Your Honor, that they could have convicted as to Officer Hampton solely based on the initial contact, they clearly could not have convicted as to the other two officers based on that and it had to have been later in the case. It starts with a push. Mrs. Wilson's son tries to intervene. Officer Hampton goes in pursuit. Mr. Wilson Sr. comes out. It moves into South Street. There's force used against Mr. Wilson there and then it ends up in the carport where there are more forces being used. I think when you're presenting that case to the jury and they're trying to determine whether people are guilty or not and they've been told if the officers are using excessive force, you have to acquit and then they convict, the way the jury looked at that case is the same way the criminal or the civil jury did from start to finish and they determined that the force used was reasonable. I guess I don't have fresh enough in my mind the specific incidents relating to the other two officers. But just remind me, okay, give me the best case scenario for how her encounter with those two officers would have allowed the jury to say, you know what, we have to determine that at no point during this entire encounter prior to arrest was excessive force used. The incident occurs starting with Mrs. Wilson outside of her apartment area with Officer Hampton. Officer Nystedt is present but he's not interacting at all with Mrs. Wilson. Right. Mrs. Wilson, according to the officer's version, pushes Officer Hampton. Officer Hampton goes to grab her to detain her. He is interfered with by Michael Wilson Jr. Son. Officer Hampton then pursues Michael Wilson Jr. and somebody tells Michael Wilson Sr. that there's an issue. Right. And Mr. Wilson Sr. comes out of the apartment. Michael Wilson Jr., he has moved toward South Street from the area where Mrs. Wilson was initially. Out in South Street, Officer Nystedt and Officer Hampton are trying to get custody of Michael Wilson Jr. Right. Mr. Wilson Sr. says that he got to that location and asked the officers to please stop hitting his son with batons. The officers say that Mr. Wilson Sr. pushed Officer Nystedt out into the street. Let me ask you to do this. Just take them plaintiff by plaintiff. So let's focus on Mrs. Wilson. We've got her initial encounter with Officer, I don't know the names, Hampton is it? Officer Hampton. Okay. So stop there. We already figured out that the jury could have convicted just based on the initial show. Right. So as to the other two, just give me that. Her encounters with them. The next time that Mrs. Wilson encounters any of the three police officers is in the carport area. After the incident in the street has taken place, Mr. Wilson Sr. has fled from the police. They've chased him and they end up in the carport area. Right. He's on the ground and the officers, Hampton and Nystedt, are trying to get him into custody. Officer Kruger has arrived with his partner, Officer Davenport, who's not involved in the case. Officer Nystedt is approaching Mr. Wilson Sr., who's on the ground, and Mrs. Wilson jumps on Officer Nystedt's back. At that point, Officer Hampton is trying to pull her off of him, off of Officer Nystedt. Okay. Just stop right there. So Officer Nystedt, the jury could well have found that the jumping on the back, hey, the guy wasn't using any excessive force with respect to Mrs. Wilson. At that point, she's guilty. Correct. Okay. So go to the next, the last officer then. And Officer Kruger, who's dealing with Mr. Wilson Sr., sees that Officer Hampton has attempted to do what's called a hair pull takedown on Mrs. Wilson to get her off of Officer Nystedt. She has a hair weave. When he grabs her hair to pull her off, the hair weave comes out. Officer Kruger is giving her commands. She's not complying with the commands. And there's force used, baton strikes against her in the forearm areas by Officer Kruger. That's the only interaction that he has with Mrs. Wilson before the handcuffing actually takes place. And again, Officer Hampton was giving her commands as well prior to him attempting to take the hair pull takedown. So the jury could have convicted at that point as well. Okay. But we don't know. And for you to win, you have to know for sure. It has to necessarily be the case that the jury found the version of the facts that you want. And so Hampton I think you have to put out, because the guilty verdict could have been based solely on the initial push. So it seems to me that the best case for you is as to Officer Kruger, is it? Officer Kruger. And so his interaction with Mrs. Wilson is when he's, is she still on the back of the other officer? No. She's off now. She's pulled off, and then he strikes her when she fails to comply with the commands, and she's striking at him. She's punching at him, and he's striking her. Got it. Okay. And then again, Officer Nystedt, he just had her jump on his back. So that's with Mrs. Wilson. And then Mr. Wilson, we're dealing with Officer Nystedt out in South Street. When he pushes Officer Nystedt in the street, Officer Nystedt uses force against him. And then in the carport with Officer Nystedt and Officer Hampton, and Officer Hampton is well in the street. But the conviction as to Mr. Wilson was only against Officer Nystedt. Just Officer Nystedt? That's what the criminal record says, yes. And that's what the brief says. Okay. I mean, we have the, don't we have the verdict for him? Right. Yeah. Okay. But I think that the thing that is important here is the jury did get to hear the entire case, the civil case. They were limited by the judge's finding in what they could decide. But Magistrate Judge Walsh gave the Wilsons an opportunity to present the entire forced scenario to provide context for the jury. And he also allowed over-defense objection at trial to make it, the heck bar end at the handcuffing process, which allowed the jury to determine for themselves when the handcuffing process began. I obviously argued at trial handcuffing process is when the handcuffs go on. Mr. Dunn argued at trial the handcuffing process is basically when the officers have control of the situation, which was when they had Mr. Wilson surrounded on the ground, and then Mrs. Wilson is coming in there. Because the testimony from the Wilsons is they were hugging, surrounded by police officers were raining baton blows on them. And I think it's very telling that the jury, prior to rendering their verdict, actually gave a jury note that said, while we feel sorry for the Wilsons, this was their fault. That was the essence of the verdict, of the jury note. And so the heck bar was appropriate at a minimum as to Mrs. Wilson's with regard to Officer Nystedt and with regard to Officer Kruger, based on the criminal jury convictions. And I would argue that it was appropriate as well as to Officer Hampton, because this was a continuous course of conduct. And I would say that this was a unique position for the plaintiffs to be in, because the plaintiffs' counsel represented them in the criminal case. And if the jury finding was only limited to the initial contact between Mrs. Wilson and Officer Hampton, he could have pled around that. He could have pled specifically in the civil case to avoid a heck bar, and he didn't do that. He also could have appealed the instruction in the criminal case that he wanted and didn't get, and he didn't get that either. So now he's saying, we had our first day in court and we lost with one jury. I didn't plead specifically enough in the civil case. I got a second jury. I got basically everything from the judge in terms of giving the case to the jury, arguing the sympathy, hoping for a favorable verdict for my clients. And then when I lost in the civil case, I want to come back and say the heck bar should not have applied. And the reality is, given the Beetz case and the Smith case, and the fact that Beetz was decided after Hooper and it was decided after Yount, so presumably the Ninth Circuit was aware of those cases, if this case is sent back and reversed, you're basically putting prosecuting agencies in a position to charge every single discrete, specific, possible act of resistance if there's ever going to be a case where you can actually apply the bar. No. You just give the jury instruction that defense counsel asks. That takes care of the problem. If that's an appropriate instruction under the law. If that's the bar you want to invoke later, that's what prosecutors need to do. It's not the problem doesn't you don't have to charge 50,000 different discrete incidents. Well, Your Honor, I think you do. And here's why. Because if you give the instruction that says if they resisted at any time during the incident, whenever the incident starts and whenever the incident stops, that's a fairly vague instruction to give the jury. And I don't know that criminal judges are going to be comfortable giving such a vague instruction. And so I think it leaves prosecutors who are not in comedy with the agencies that later defend the officers and their municipalities, that puts them in a position to get into very specific charging. I know in the military we have providence inquiries where the judge goes through at length what exactly did you do wrong and why do you think you did that wrong so we know. Here, this case is different from the GILTI plea and the NOLO plea because we do know what the jury found, given the way the case was presented and argued, including the plaintiff's argument that if they did anything wrong at any time, you should acquit, despite that not being an instruction. Let me ask you just one last question. I know your time is almost up. But do you agree that there can't be any logical reason, in terms of the way we approach the analysis, there can't be any logical difference between the GILTI plea context and the jury verdict context? I don't agree with that. And here's why. My own personal opinion is that when you have somebody who is pleading guilty or pleading no contest, there is some benefit to the judicial system in terms of a person because they're entering into an agreement that's going to limit their criminal exposure at some point. And if the judiciary, which they typically would do in a criminal context, doesn't go in depth into the plea, what specific facts lead to the plea, then the appellate court and the district court and the civil case is left wondering, well, what exactly did they plead guilty to? If, on the other hand, you are going to ask a jury to decide your fate and the jury is going to decide your fate based on hearing all of the evidence, which they did in the criminal case. The Wilsons testified and the officers testified. And that jury verdict is going to go against you. I think that's a different analysis for the district court. Why? It's the same question for heck purposes. The same question for heck purposes really comes down to how are we confident that the verdict is not going to be rendered invalid by the civil verdict, the criminal conviction. If we don't know, which is typically are you guilty, yes or no, do you plead no contest, yes or no, then we don't know if the civil verdict is going to render the criminal verdict invalid. But in this case, we had two full trials hearing the same evidence and two juries came out the exact same way, which is why I think we can logically say the heck bar, especially as it was tailored to benefit the Wilsons, was properly applied. Thank you very much. Thank you. Rebuttal. So what just occurred, Your Honors, is that we spent a lot of time in court trying to figure out what that jury did. With which plaintiff, with which officer, at which location, at which time, with which person. And the problem is and the reason why we're reading tea leaves and we're trying to figure out what was going on in the jury's mind is because we don't know what was going on in the jury's mind. And if we don't know, that does not inure to the benefit of the government, because the government must demonstrate. The government has a burden of proof that success in a 1983 action would necessarily imply, necessarily imply the invalidity of the original proceeding. Well, we never know what goes on in the jury's mind, but we do know what the verdict is and we do know what the instructions are. That is correct. And the instruction, did I cut you off, Your Honor? No. So would you just focus for me on the instructions here and why they not? The instruction is at any time did any plaintiff, defendant slash plaintiff, willfully obstruct a police officer who was lawfully in performance of his duties. It is undisputed that this crime was committed on many times when force wasn't used. And the reason why we have error here is because this is the instruction that was read to the jury, and in wondering why the jury wrote that note, why the jury said that this was all the Wilson's fault, over my screaming objections. This is the instruction that the district court read to the jury. In the aftermath of the incident with defendant Long Beach officers Hampton, Neistat, and Kruger on May 9, 2008, plaintiffs Keisha Wilson and Michael Wilson Sr. were charged with obstructing or resisting the officers in the performance of their duties. Plaintiffs went to trial and were convicted by a jury. In reaching this verdict, the jury necessarily concluded that the officers were not using excessive force against the Wilsons at the time the Wilsons were obstructing the officers. They were either obstructing or resisting them. Thus, the issue having already been resolved, it is not for you to decide whether excessive force was used prior to the time that the officers began the process of handcuffing the Wilsons. Now, you can't win a trial with that instruction out there, because essentially what this judge told the jury is another jury already heard this evidence and already found a certain way, and you can't find the other way. So in terms of the concept that was raised in the argument, that we had a chance to put on the evidence, and we had a chance to try this case again, we did not, because this case was taken away from us. Now, if there are no further questions, I will submit. Thank you very much. We thank both counsel for your helpful arguments. The case just argued is submitted, as is the final case in this morning's calendar, Lauder v. Alno-Friva. That concludes this morning's calendar. We're adjourned.
judges: Schroeder, Clifton, Watford